Lisa T. Belenky (CA Bar No. 203225)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x 307
Facsimile: (415) 436-9683
Email: lbelenky@biologicaldiversity.org

Deborah A. Sivas (CA Bar No. 135446)
STANFORD ENVIRONMENTAL LAW CLINIC
Stanford Law School
Crown Quadrangle
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 723-0325
Facsimile: (650) 723-4426
Email: dsivas@stanford.edu

Attorneys for Plaintiffs Center for Biological Diversity, Sagebrush Sea Campaign, Western Watersheds Project, and Desert Survivors

ORIGINAL FILED
AUG 2 3 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, SAGEBRUSH SEA CAMPAIGN, WESTERN WATERSHEDS PROJECT, and DESERT SURVIVORS,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE, and SERVICE, DIRK KEMPTHORNE, Secretary of the Interior,<br><br>Defendants. | Case No. C 07 4347<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT

## I. INTRODUCTION

1. This action challenges the U.S. Fish and Wildlife Service's rejection of a Petition to list the Mono Basin area sage grouse as a threatened or endangered species under the Endangered Species Act. The Petition and information in the Service's files contain substantial evidence of the threats to the continued existence of Mono Basin area sage grouse. Nonetheless, the Service rejected the Petition and refused to initiate a status review of this imperiled species. As Plaintiffs will demonstrate, the Service failed to adequately assess the information that was provided and the existing best available science regarding threats to the Mono Basin area sage grouse, applied the wrong legal standard to its review of the Petition, and relied on inadequate existing regulatory mechanisms to protect the sage grouse in lieu of evaluating the need for listing the Mono Basin area sage grouse under the Act. Plaintiffs ask this Court to ensure that the Service complies with the law and initiates a full status review of the Mono Basin area sage grouse.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as a defendant), 16 U.S.C. §§ 1540(c) & (g) (action arising under the Endangered Species Act and citizen suit provision), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

3. This Court has authority to grant the requested relief pursuant to 28 U.S.C. §§ 2201-2202 (declaratory and injunctive relief) and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

4. As required by the Endangered Species Act ("ESA"), the Plaintiffs provided the Secretary of the Interior ("Secretary") with written notice of intent to sue more than 60 days ago. ESA § 11(g)(2), 16 U.S.C. § 1540(g)(2). Because the Secretary has not remedied the violations of law, there exists an actual controversy between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391(e) and ESA § 11(g)(3)(A), 16 U.S.C. § 1540(g)(3)(A) because Plaintiff Desert Survivors is incorporated and based in Oakland, California, and the Center for Biological Diversity maintains and office in San Francisco, California.

### III.  INTRADISTRICT ASSIGNMENT

6. This action is properly assigned to the San Francisco Division of this Court because Plaintiff Desert Survivors is based in Oakland and Plaintiff Center for Biological Diversity maintains an office in San Francisco.

### IV.  PARTIES

7. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-profit corporation with over 35,000 members and offices in San Francisco, San Diego, and Los Angeles, California; Tucson and Phoenix, Arizona; Silver City, New Mexico; Washington, D.C.; and Portland, Oregon.  The Center is dedicated to the preservation, protection, and restoration of biodiversity, native species, ecosystems, and public lands.  The Center's members and/or staff use and enjoy, and intend to continue to use and enjoy, lands where the Mono Basin area sage grouse is found for observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities.  The Center's members and/or staff have researched, studied, and observed the sage grouse in the Mono Basin area and intend to research, study, and observe the species in the future.  The Center's members and/or staff's educational, scientific, aesthetic, spiritual, professional, and conservation interests are being adversely affected and irreparably injured by the U.S. Fish and Wildlife Service's continued violations of the Endangered Species Act.  The Center brings this suit on its own behalf and on behalf of its members and staff adversely affected by the Service's violation of the Endangered Species Act.

8. Plaintiff the SAGEBRUSH SEA CAMPAIGN ("SSC") focuses public attention and conservation resources on protecting and restoring the vast sagebrush steppe landscape in the American West. SSC participates in public planning processes, advocates for natural resource protection, and uses education, research, and litigation to conserve and restore the

Sagebrush Sea for present and future generations. SSC has sought the protection of greater sage-grouse, Gunnison sage-grouse, and Mono Basin area sage grouse since 1999, and petitioned to list Mono Basin area sage grouse under the Endangered Species Act in 2005.  SSC is a project of Forest Guardians.

9. Plaintiff WESTERN WATERSHEDS PROJECT is a non-profit conservation organization headquartered at the Greenfire Preserve located on the East Fork of the Salmon River, near Clayton in Custer County, Idaho. The Greenfire Preserve is a former cattle ranch, which Western Watersheds manages to restore native habitats and protect wildlife; educate the public about native habitat restoration, wildlife protection, and other environmental issues; and pursue science-based advocacy in the region.  Western Watersheds Project has more than 1,600 members, volunteers and supporters, who live in Idaho and across the United States. The organization has professional staff in Hailey and Boise Idaho; Mendon, Utah; Reseda, California; Tucson, Arizona; and Pinedale, Wyoming. Western Watersheds has over 100 members in California. Western Watersheds, as an organization and on behalf of its members, is concerned with and active in seeking to protect and improve the wildlife, riparian areas, water quality, fisheries, and other natural resources and ecological values of watersheds throughout Idaho and the West, including the Mono Basin area sage-grouse and its habitat.

10. Plaintiff DESERT SURVIVORS is a California non-profit corporation based in Oakland, California.  Desert Survivors is a conservation organization with more than 700 members primarily in California and Nevada, focused on the protection of desert plants, wildlife and ecosystems. Desert Survivors also engages in a vigorous program of public education about desert lands and their unique character. Desert Survivors' primary goals are to protect fragile desert lands and to teach visitors to those lands about their value.  Desert Survivors members place a high value on the continuing existence and essential value of desert wildlife and wilderness. Desert Survivors leads educational trips to desert lands. Desert Survivors has led more than 400 such trips to the desert in the last fourteen years, including many trips to Mono County.  Desert Survivors members value the desert as a natural ecosystem inhabited by special

plants and animals. Desert Survivors will continue to lead trips, including service trips, to the desert areas of California as part of its ongoing program of monitoring desert wilderness. A major goal of these trips is to study desert plants and animals in their natural habitats, and to monitor their condition. Preserving the sage grouse and its habitat in the Mono Basin area is important to Desert Survivors, because of this population's increasing rarity and because of the fragility of its habitat. As part of its ongoing desert excursion program, Desert Survivors has led several trips in recent years to the Mono Basin including trips in 2007 to Mono Lake, the Bodie Hills, and the White Mountains. Desert Survivors' members value desert wildlife living in its wild and natural condition, and enjoy the inspiration and educational benefits of observing wildlife in this habitat. Desert Survivors members and staff have actively sought to protect areas in the Mono Basin as a place where wildlife may flourish, where their habitat may remain unimpaired by development and excessive human interference. Desert Survivors members and directors derive scientific, recreational, conservation, and aesthetic benefits from the sage grouse's, and other rare and imperiled species' existence in the wild. Desert Survivors members and directors risk losing the benefits they enjoy from stable and healthy populations of the Mono Basin distinct population segment of the sage grouse if this species continues to decline. Desert Survivors' members recreational, aesthetic, scientific, educational, scientific, spiritual, and conservation interests are being adversely affected and irreparably injured by the Service's continued violations of the Endangered Species Act. Desert Survivors brings this action on behalf of itself and its members, staff, and directors adversely affected by the Service's failure to protect Mono Basin area sage grouse under the ESA.

11.     Defendant DIRK KEMPTHORNE is the Secretary of the Interior ("Secretary"). The Secretary is the federal official charged with listing species as endangered or threatened under the ESA. He is sued in his official capacity. The Secretary has delegated his obligation to review listing petitions under the ESA to the U.S. Fish and Wildlife Service.

12.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE ("the Service") is an agency within the Department of the Interior and has been delegated responsibility for

implementing the ESA including proposed and final listing and critical habitat decisions and processing petitions for such listings.

## V. THE ENDANGERED SPECIES ACT

13. The ESA is a federal statute designed to conserve endangered and threatened species and the ecosystems upon which those species depend. ESA § 2(b), 16 U.S.C. § 1531(b).

14. To achieve these objectives, the Service is required to protect imperiled species by listing them as either "threatened" or "endangered" if they are facing extinction due to any one, or any combination of, the following factors:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) over-utilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

ESA § 4(a)(1), 16 U.S.C. § 1533(a)(1).

15. A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." ESA § 3(6), 16 U.S.C. § 1532(6). A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." ESA § 3(20), 16 U.S.C. § 1532(20).

16. Under the ESA, a species is explicitly defined to include "any subspecies of fish or wildlife or plants, and any *distinct population segment* of any species of vertebrate fish or wildlife which interbreeds when mature." ESA § 3(16), 16 U.S.C. § 1532(16) (emphasis added).

17. Three elements are considered by the Service in a decision regarding the status of a possible distinct population segment ("DPS") as endangered or threatened under the ESA: discreteness of the population segment in relation to the remainder of the species to which it belongs; the significance of the population segment to the species to which it belongs; and the

population segment's conservation status in relation to the Act's standards for listing (*i.e.*, is the population segment, when treated as if it were a species, endangered or threatened?).  See Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed. Reg. 4722 (February 7, 1996).

18. A population segment of a vertebrate species may be considered discrete if it satisfies either one of the following conditions:  it is markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors (quantitative measures of genetic or morphological discontinuity may provide evidence of this separation); or it is delimited by international governmental boundaries within which differences in control of exploitation, management of habitat, conservation status, or regulatory mechanisms exist that are significant in light of section 4(a)(1)(D) of the ESA.  Id.

19. A population segment of a vertebrate species may be considered significant if it satisfies any of the following:  persistence of the discrete population segment in an ecological setting unusual or unique for the taxon; evidence that loss of the discrete population segment would result in a significant gap in the range of a taxon; evidence that the discrete population segment represents the only surviving natural occurrence of a taxon that may be more abundant elsewhere as an introduced population outside its historic range; evidence that the discrete population segment differs markedly from other populations of the species in its genetic characteristics; or other evidence of significance ("because precise circumstances are likely to vary considerably from case to case, it is not possible to describe prospectively all the classes of information that might bear on the biological and ecological importance of a discrete population segment").  Id.

20. If a population segment is discrete and significant (*i.e.*, it is a distinct population segment), its evaluation for endangered or threatened status will be based on the ESA's definitions of those terms and a review of the factors enumerated in section 4(a) of the ESA.  Id.

21. A species receives mandatory substantive protections under the Endangered Species Act if and only if it is listed as endangered or threatened.  See 50 C.F.R. § 402.12(d)

COMPLAINT                                                                                                                                                7

(2006). Thus, the listing process is the essential first step in the ESA's system of species protection and recovery.

22. Any interested person can initiate the listing process by filing a petition to list a species with the Secretary. ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a)(2005).

23. Upon receipt of a petition to list a species, the Secretary has 90 days to the maximum extent practicable to make a finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(b)(1). This determination is known as a 90-day finding.

24. If the Secretary makes a positive 90-day finding, he must promptly publish it in the Federal Register and commence a "status review" of the species. ESA § 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A). A status review enables the agency to conduct a complete assessment of the status of a species, with input from interested members of the public and the scientific community, and determine whether a population qualifies as a DPS and whether it is facing extinction.

25. After issuing a positive 90-day finding, the Secretary has 12 months from the date that he received the petition to make one of three findings: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted but presently precluded by work on other pending proposals for listing species of higher priority. ESA § 4(b)(3)(B), 16 § 1533(b)(3)(B); 50 C.F.R. § 424.14(b)(3).

26. If the Secretary finds that listing the species is warranted, he must publish a proposed rule to list the species as endangered or threatened in the Federal Register. ESA § 4(b)(5), 16 U.S.C. § 1533(b)(5).

27. Within one year of the publication of a proposed rule to list a species, the Secretary must make a final decision on the proposal. ESA § 4(b)(6)(A), 16 U.S.C. § 1533(b)(6)(A).

28. Along with a final listing determination, the Service must issue a final decision regarding the designation of critical habitat for the species to the maximum extent prudent and determinable. ESA § 4(a)(3) & ESA § 4(b)(6)(C), 16 U.S.C. §§ 1533(a)(3) & 1533(b)(6)(C).

## VI.   THE MONO BASIN POPULATION OF SAGE GROUSE

29. Greater sage grouse (*Centrocercus urophasianus*) once occupied parts of twelve western states and three Canadian provinces and historically occurred in such numbers that huge flocks were reported to "blacken the sky." However, sage-grouse declined as the West was settled. Greater sage-grouse range and distribution have decreased by 56 percent while overall abundance has been reduced by as much as 93 percent from historic levels.

30. Sage grouse occur only in two subregions in California: the Mono Basin area and the Modoc Plateau. Research indicates that Mono Basin area sage grouse are genetically distinct from other greater sage-grouse populations and are significant to the health of greater sage-grouse populations rangewide.

31. Like all greater sage grouse populations across the West, the Mono Basin area sage grouse distinct population segment has declined dramatically since the early 1900's. A species that was once described as abundant now only exists in small, isolated populations. Vast portions of Mono Basin area sage grouse habitat have been significantly degraded or eliminated by livestock grazing, off-road vehicle use, roads, wildfire, conifer encroachment, and development. Poor land management continues to fragment an already tattered landscape in the Mono Basin area, threatening the Mono Basin sage grouse with extinction. Immediate action is needed to protect the Mono Basin area sage grouse and ensure that the population survives into the future and recovers in the wild.

## VII.   THE PETITION TO LIST THE MONO BASIN DISTINCT POPULATION SEGEMENT OF THE GREATER SAGE GROUSE

32. On November 10, 2005, Sagebrush Sea Campaign, Western Watersheds Project, Center for Biological Diversity, and Christians Caring for Creation submitted a detailed petition to the Service seeking to list the Mono Basin area sage grouse as a threatened or endangered

COMPLAINT                                                                                                                                 9

distinct population segment under the Endangered Species Act. Status Review and Petition to List the Mono Basin Area Sage Grouse (*Centrocercus urophasianus*) as a Distinct Population Segment of Greater Sage-Grouse as Threatened or Endangered Under the Endangered Species Act (hereinafter "Petition").

33. On December 19, 2006, the Service belatedly issued its 90-day finding on the Petition, as well as on a December 2001 petition submitted by the Institute for Wildlife Protection, also seeking to list the Mono Basin area sage grouse under the ESA. U.S. Fish and Wildlife Service, 90-Day Finding on Petitions to List the Mono Basin Area Population of the Greater Sage-Grouse as Threatened or Endangered, 71 Fed. Reg. 76058 (Dec.19, 2006) (hereinafter "FWS Finding"). The Service concluded that while there is substantial scientific or commercial evidence indicating that the Mono Basin area sage grouse is a distinct population segment ("DPS"), there is not substantial information on threats to the population or other factors to indicate that listing may be warranted under the ESA. FWS Finding, 71 Fed. Reg. at 76063, 76078.

34. On June 1, 2007, Petitioners provided notice of intent to bring this lawsuit to Defendants pursuant to 16 U.S.C. § 1540(g) via First Class Mail, Return Receipt. The notice clearly stated that Petitioners believe that the Service's decision was arbitrary, capricious, unsupported by the evidence in the record, and not in accordance with the ESA, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). The notice was received by the Secretary of the Interior on June 6, 2007, and by Defendant U.S. Fish & Wildlife Service on June 4, 2007. More than 60-days have elapsed without any response from Defendants and Defendants have not remedied the violations of law.

### VIII. VIOLATIONS OF LAW

**A. Failure to Rely on the Best Scientific and Commercial Data Available**

35. Each of the allegations set forth above are incorporated by reference herein.

36. In the 90-day finding for the Mono Basin area sage grouse, the Service failed to

faithfully apply the requisite 90-day standard to Plaintiffs' petition: "whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533 (b)(3)(A). The Petition presented substantial information that listing of the Mono Basin area sage grouse may be warranted, defined as "that amount of information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b)(1). The Service's finding to the contrary was arbitrary and capricious and, therefore, in violation of applicable APA standards. 5 U.S.C. § 706(2)(A).

37. When making a listing determination pursuant to the ESA, the Service must rely on the best scientific and commercial data available. ESA § 4(b)(1)(A), 16 U.S.C. § 1533(b)(1)(A).

38. In the 90-day finding, the Service ignored or discounted the best scientific and commercial data available that threats to the species are substantial and serious; and ignored or discounted information demonstrating the imperiled status of the species. For example, with respect to the loss of the Mono Basin area sage grouse's geographic range, the Service explicitly acknowledges that "some additional habitat losses may be occurring at present," but finds that there is insufficient information on the rate and extent of the losses. FWS Finding, 71 Fed. Reg. at 76063. Likewise, the Service concedes that "where fences, power lines, and roads occur in close proximity to occupied sage grouse habitat, they may impact the species," but states that there is inadequate information on the extent or magnitude of these threats. Id. at 76067. The Service employs the same reasoning with respect to the threat of wildfires to Mono Basin area sage grouse, concluding that "[w]ithin the Mono Basin area, wildfire is a potential threat to sage grouse habitat," but that there is "no documentation that large landscape fires have occurred in this area or that significant amounts of habitat have been lost here due to fire." Id. at 76073. One final example of how the Service effectively required conclusive evidence of impacts rather than relying on the best available science appears in the discussion of threats from off-road vehicles; because most of the discussion of threats "relate[s] only to the potential for off-road

vehicles to disturb, disrupt, or cause mortalities to sage grouse, with relatively few specific examples . . . all involv[ing] indirect effects," the Service concludes that there is insufficient information regarding the "extent, magnitude, and immediacy" of the threat. Id. at 76077.

39. The Service fails to provide adequate justification for dismissing a number of scientific studies throughout its analysis. The reasons provided for ignoring these studies are neither rational nor justified, given the non-stringent standard for a 90-day finding.

40. One of the most common examples of this flaw is the Service's disregard of any study that is not specific to the Mono Basin area, even if the study is otherwise relevant to the sagebrush ecosystem generally or the Great Basin area specifically. For example, in its assessment of the effects of livestock grazing and non-native species on Mono Basin area sage grouse, the Service disregarded Wisdom et al. (2003) and Rowland et al. (2003) studies demonstrating the threats of cheatgrass displacement from livestock grazing because "both of these assessments were completed at a large geographic area scale. Neither of these assessments is specific to the Mono Basin area." FWS Finding, 71 Fed. Reg. at 76069. In evaluating the threat of pinyon-juniper displacement, the Service similarly dismissed both the Connelly et al. (2004) and Wisdom et al. (2003) studies documenting this threat to the sagebrush ecosystem because both "were for large geographic areas . . . and hence they do not provide a specific assessment of conditions in the Mono Basin area." Id. at 76071. The Service also disregarded these same two studies in its assessment of wildfire threats on the grounds that they "were conducted at large landscape scales" and neither is specific to the habitat in the Mono Basin area. Id. at 76073.

41. In addition to generally dismissing all studies not specific to the Mono Basin area, the Service disregarded a substantial amount of scientific evidence concerning the threats from livestock grazing to sagebrush habitat, which are directly relevant to Mono Basin area sage grouse. Specifically, the Service entirely disregarded all of the cited studies documenting the negative impacts of livestock grazing on nesting success and forb and insect availability because these studies did not involve "direct comparisons of grazed versus non-grazed sites." 71 Fed.

COMPLAINT                                                                                                                         12

Reg. at 76068-69.  Furthermore, the Service dismissed the Schroeder and Baydack (2001) study because it discussed "prairie grass species in general without providing specific conclusions for sage grouse," and the Johnson and Boyce (1990) study because it was based on captive birds, not a field study.  Id.  Finally, the Service disregarded all of the studies generally documenting grazing impacts on sagebrush habitat because they do not additionally document the direct impact on sage grouse.  Id. at 76069.

42.  By ignoring or discounting the information that was provided in the Petition and found in the Service's own files, the Service violated the ESA's requirement that the agency base its listing determinations on the best scientific and commercial data *available*.  ESA § 4(b)(1)(A), 16 U.S.C. § 1533(b)(1)(A) (emphasis added).  As a result, the agency's 90-day finding was and is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the ESA within the meaning of the APA.  5 U.S.C. § 706(2).

### B.  Use of an Improper Standard for a 90-Day Finding

43.  Each of the allegations set forth above are incorporated by reference herein.

44.  A 90-day finding provides a threshold review of an ESA listing petition. The Service must determine "whether the petition presents substantial scientific or commercial information indicating that [listing] may be warranted."  ESA § 1533(b)(3), 16 U.S.C. § 1533(b)(3).  Substantial information is "information that would lead a reasonable person to believe that the measure proposed in the petition *may* be warranted."  50 C.F.R § 424.14(b) (emphasis added).

45.  The Service did not determine if the Mono Basin area sage grouse Petition provided substantial scientific information that would lead a reasonable person to believe that the listing of the sage grouse DPS as an endangered species may be warranted.  Instead, although the Service found that the Mono Basin area sage grouse may meet the standards as a distinct population segment, the Service applied an erroneous legal standard by requiring that the Petition provide conclusive proof that the threats to the sage grouse will lead to extinction.

46. As the Service admits (71 Fed. Reg. at 76063), the information presented by the Petition, as well as data possessed by the Service, is more than sufficient to lead a reasonable person to believe that the Mono Basin are sage grouse a DPS. The Petition also provides ample information to lead a reasonable person to believe that Mono Basin area sage grouse are in danger of extinction and therefore, the Service should have found that listing of the Mono Basin area sage grouse distinct population segment may be warranted pursuant to Section 4(b)(3)(A) of the ESA, 16 U.S.C. §1533(b)(3)(A), and the Service should have "promptly commenced a review of the status of the species," Id.

47. By applying the wrong legal standard and requiring a higher burden than that imposed by the ESA, the Service violated the ESA's 90-day finding requirement. ESA § 4(b)(3), 16 U.S.C. § 1533(b)(3). Taken as a whole, the information available to the Service would lead a reasonable person to believe that Mono Basin area sage grouse is a DPS, and that these sage grouse are facing extinction. The Service's negative 90-day finding on the Petition was and is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the ESA within the meaning of the APA. 5 U.S.C. § 706(2).

### C. DPS Analysis

48. Each of the allegations set forth above are incorporated by reference herein.

49. The Petition and the Service's files contain substantial evidence of the Mono Basin area sage grouse's significance to the entire sage grouse population due to the population's peripheral location, and genetic characteristics, and its reproductive isolation. The Service found that Mono Basin area sage grouse are genetically unique, but disagreed that the loss of the population would result in a significant gap in the range of the species. Nonetheless, in the 90-day Finding the Service concluded that this population may satisfy the discreteness criteria (71 Fed. Reg. at 76062), and the significance criteria (id. at 76063), based on its genetic differences from other populations. The Service found that "the November 2005 petition, and our files, do present substantial scientific or commercial information to indicate that Mono Basin area sage-grouse may be a DPS based, on genetic evidence, which may meet both the

discreteness and significance criteria of the DPS policy." 71 Fed. Reg. at 76063.

### D. Improper Threats Analysis

50. Each of the allegations set forth above are incorporated by reference herein.

51. The Petition presented significant information on: the loss and destruction of habitat within the geographic range of the Mono Basin area sage grouse due to wildfire, off-road vehicle use, grazing, and habitat conversion to pinyon-juniper woodlands; habitat fragmentation due to development, roads, and powerlines; and hunting. The Service improperly disregarded much of the evidence of threats to the Mono Basin area sage grouse.

52. In the 90-day finding, the Service ignored or discounted the best scientific and commercial data available that threats to the species are substantial and serious; and ignored or discounted information demonstrating the imperiled status of the species.

53. The Petition provides ample information regarding both historic and ongoing loss of habitat within the range of the species and the existing threats to the species to lead a reasonable person to conclude that the species may be imperiled and that listing "*may* be warranted." 50 C.F.R § 424.14(b) (emphasis added).

54. The Petition provides specific information regarding threats within the species' habitat including, but not limited to: increasing development on both private and public lands; mining; livestock grazing; spread of non-native plant species; off-road vehicle use; habitat changes from encroachment of pinyon-juniper woodlands into sagebrush-steppe; increasing development of fences, power lines, and roads; and water resource development.

55. The Petition provides information regarding over-utilization of the species for sport hunting and the impacts of disease and predation.

56. The Petition also provides information regarding the inadequacy of existing regulatory mechanisms. In particular, the Petition provides a detailed analysis of the shortcomings of the Bi-State Sage Grouse Conservation Plan that shows that the Plan fails to contain objective, measurable criteria for assessing sage grouse populations or habitat, has no standards by which to measure recovery goals, and does not even aspire to recover the species.

The Petition also provides a specific comparison of the Bi-State Conservation Plan and the protections that the species would have if it were listed and shows that the Plan provides far less protection and little certainty of any protection being achieved. Indeed the Service reached the same conclusion in 2004 when it determined that 29 out of 30 individual conservation measures in the Bi-State Plan did not meet the standards of the Service's Policy for Evaluation of Conservation Efforts When Making Listing Decisions ("PECE Policy").

57. The Petition also reviewed the BLM-Bishop Resource Management Plan ("RMP"). The Petition showed that the RMP failed to provide adequate protection for this sage grouse population from impacts of activities such as grazing, energy development, and off-road vehicle recreation. The Petition also noted that the Mono Basin area sage grouse has experienced continued declines since the RMP was adopted in 1993.

58. The Service nonetheless, relied on the Bi-State Conservation Plan and other voluntary measures, such as annual limits on hunting, to conclude that the Mono Basin area sage grouse does not face substantial threats to its continued existence.

59. The Petition provided more than sufficient information to show that listing may be warranted and, therefore, the Service's determination to the contrary is arbitrary and capricious.

60. The Service also failed to assess the cumulative impacts of the threats the Mono Basis area sage grouse faces. While each of the identified land uses—such as development, grazing, off-road vehicle use and energy development—represent individual threats to the continued viability of the species, collectively they pose a very significant and serious threat to the continued existence of the DPS.

61. By dismissing valid scientific and commercial evidence of the threats to the species, relying on improper, voluntary, uncertain, and/or unenforceable protections to conclude that the Mono Basin area sage grouse does not face substantial threats, and by failing to consider the cumulative impact of the threats to the population, the Service arbitrarily concluded that Mono Basin area sage grouse are not in danger of extinction or are not likely to become

endangered in the foreseeable future.  As a result, the 90-day finding was and is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the ESA within the meaning of the APA.  5 U.S.C. § 706(2).

## CLAIM FOR RELIEF

### (For Violations of §4 of the Endangered Species Act and the Administrative Procedures Act)

62.  Each of the allegations set forth above are incorporated by reference herein.

63.  When making a listing determination pursuant to the ESA, the Service must rely on the best scientific and commercial data available. ESA § 4(b)(1)(A), 16 U.S.C. § 1533(b)(1)(A).

64.  A 90-day finding provides a threshold review of an ESA listing petition. The Service must determine "whether the petition presents substantial scientific or commercial information indicating that [listing] may be warranted."  ESA § 1533(b)(3), 16 U.S.C. § 1533(b)(3).  Substantial information is "information that would lead a reasonable person to believe that the measure proposed in the petition *may* be warranted." 50 C.F.R § 424.14(b) (emphasis added).

65.  The Petition and information in the Service's files contain substantial evidence of the Mono Basin area sage grouse's significance to the entire sage grouse population due to the population's peripheral location, genetic characteristics, and its reproductive isolation.  The Service acknowledged in the 90-day Finding that this population may be a DPS.

66.  The Petition and information in the Service's files contain substantial evidence of the threats to the continued existence of Mono Basin area sage grouse population in the wild. The Service's failure to adequately assess the information that was provided and the existing best available science regarding the threats to the species violates the ESA's requirement that the agency base its listing determinations on the best scientific and commercial data available.  ESA § 4(b)(1)(A), 16 U.S.C. § 1533(b)(1)(A).  As a result, the agency's 90-day finding was and is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the ESA

COMPLAINT                                                                                                                                      17

within the meaning of the APA.  5 U.S.C. § 706(2).

67.     By applying the wrong legal standard and requiring a higher burden than that imposed by the ESA, the Service also violated the ESA's 90-day finding requirement.  ESA § 4(b)(3), 16 U.S.C. § 1533(b)(3).  Considered as a whole, the information available to the Service would lead a reasonable person to believe that Mono Basin area sage grouse population is a DPS, and that these sage grouse are facing extinction. The Service's negative 90-day finding on the Petition was and is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the ESA within the meaning of the APA.  5 U.S.C. § 706(2).

68.     By relying on inadequate existing regulatory mechanisms to conclude that the Mono Basin area sage grouse does not face substantial threats, and by failing to consider the cumulative impact of the threats the DPS faces, the Service arbitrarily concluded that Mono Basin area sage grouse are not in danger of extinction or are not likely to become endangered in the foreseeable future.

69.     As a result of all of these deficiencies, and others, the Service's 90-day finding was and is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the ESA within the meaning of the APA.  5 U.S.C. § 706(2).

**PRAYER FOR RELIEF**

Plaintiffs request that this Court enter judgment providing the following relief:

1. Issue a Declaratory Judgment that Defendants are in violation of the law as alleged herein;
2. Declare unlawful and set aside the Service's negative 90-day finding on the listing petition for the Mono Basin area sage grouse distinct population segment;
3. Award Plaintiffs their costs of litigation, including reasonable attorneys' fees as provided in the ESA, the Equal Access to Justice Act and/or any other applicable law; and
4. Any other such relief as the Court deems just and proper.

DATED: August 23, 2007

*Lisa T. Belenky*
Lisa T. Belenky (CA Bar No. 203225)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x 307
Facsimile: (415) 436-9683
Email: lbelenky@biologicaldiversity.org

Deborah A. Sivas (CA Bar No. 135446)
STANFORD ENVIRONMENTAL LAW CLINIC
Stanford Law School
Crown Quadrangle
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 723-0325
Facsimile: (650) 723-4426
Email: dsivas@stanford.edu

Attorneys for Plaintiffs Center for Biological Diversity, Sagebrush Sea Campaign, Western Watersheds Project, and Desert Survivors